The Judges of the United States Court of Appeals for the 4th Circuit. May I be seated? I'm happy to hear argument in K.I. v. Durham Public Schools. Counsel? Good afternoon, Your Honors, and may it please the Court. My name is Stacey Gahagan, and I am here on behalf of Appellants K.I., a child with autism, and her mother J.I. And we're asking this Court to do three things. First, to review the District Court's dismissal of appellants' claims due to lack of subject matter jurisdiction. Second, to find the appellants satisfy the exhaustion requirement or that equitable tolling applies to their claims. And third, to remand this case to the District Court with instructions to consider the case on its merits. Counsel, you said you're asking us to apply equitable tolling. Did you brief that issue? We did, Your Honor, about the affirmative defense and equitable remedies that were available. I recall the discussion of functional equivalent. Maybe you did the other as well? We did, Your Honor, in regards to the question of when it's a claims processing rule that it operates as an affirmative defense. Do you agree this is a claims processing rule? I'm sorry, Your Honor? Do you agree this is a claims processing rule that we're dealing with? Yes, Your Honor. Can you stay? I know we're going to get you off order of where you wanted to be. But Judge Quattlebaum asked about what I think is your second step. And so just assume for a minute that it's not jurisdictional. The trouble I'm having is figuring out how any feasible equitable remedy exists. Can you help me understand what you believe the best equitable doctrine is, whatever it might be, under whatever name, and why it would apply here? Yes, absolutely. So I would direct Your Honor to the recent case decided by the Supreme Court earlier this year, the Boeckler v. IRS. And because the facts are very similar to our case. The plaintiff in the Boeckler case filed his appeal one day late. And the Supreme Court addressed that directly and said that it was an ordinary non-jurisdictional deadline subject to equitable tolling and remanded to the Court of Appeals to determine if the equitable tolling applied. So was that—help me a little bit more with that. Was that a—was the appeal of that from a district court to the Court of Appeals or what court to what court? It was to file an appeal with the tax court. So a lower level had made the decision they were appealing to the tax court, and they were one day late in filing the appeal. And the Supreme Court rejected that the one day was going to make a difference and that the court should go back and look. Right. So what it says there is, yep, not jurisdictional. But then they don't say that equitable tolling or an equitable doctrine would apply. They just say, we're going to let that be decided below. We sort of have, you might say, that question now come back. All right. So if we agree with you that it's non-jurisdictional, we still have to understand what equitable exception or tolling or rule allows us to excuse the late filing. Right. I mean, that's what I'm trying to get at. I understand what that does is get you to my question. But my question is, what is the equitable tolling doctrine that applies here? Right. I mean, are you following? I think I am. So, Your Honor, I mean, what and we would be perfectly satisfied with a remand to the district court to determine if equitable tolling applies. But there has to be one that's that's plausible. Right. We don't we don't send it back to the district court to do something that it can't do. Right. And so what I want to know is what is a plausible even equitable doctrine that I can understand. So, I mean, we would argue that a stopple would apply. And we would also argue that that it is that the the district court in looking at the what all the steps that the appellants took specifically said in joint appendix page 243 in note eight, despite all of the steps that that appellants take and that they they basically did everything but file this this one thing. I am precluded from being able to create an equitable exception. And so I understand that. And let's assume that that's wrong and that in theory, the district court had the authority to create an equitable exception. But it doesn't have the authority to just do anything it wants to. Right. And so the concern I have is the time limit we have is a state rule. Right. Right. And so oftentimes federal courts have sort of a liberal understanding of claims processing rules in the federal system. And so we might excuse a day late in the federal system, but we don't really have that authority over state rules. Right. So if the state says you must do this in these number of days. What I don't see is our authority to say, yeah, but you didn't really have to do that. So you're right. I read two things. One, in terms of what you're being asked to do here is to uphold the state agency's interpretation of a state statute and how it applies it. And part of what we've argued is that their steps in applying the statute to appellants differed from how they applied it in the past. It differed from there. There's no definition in the statute with regard to what constitutes written notice. Counselor, I mean, I think I may be cut you off because I've read that in lots of ways. I agree. I mean, we might think this is the most kicky tack thing we've ever seen. But are we really being asked to uphold? I mean, I guess in a sense, that's one way of saying it. What we're really being asked, though, is did you exhaust? And if you didn't exhaust a state procedure in the way the state says it has to be done. That's the follow up on the question. That's what we're trying to get at. The functional equivalent cases, for example, are all state courts interpreting state court rules or federal courts interpreting federal court rules. From a federal court to stick its hands in and meddle with a state court, not just court, but administrative agency seems further removed from that. Well, your honor, I would argue that at that point you're looking at whether Chevron deferences is appropriate to the agency's decision in terms of how it interpreted that. But we don't we don't apply Chevron to state law. States get to interpret state law. We don't we don't get to tell states that they got their own law wrong. That's just that's that's not the way Chevron works. Well, and but in principle, your honor, is what I what I'm arguing is that when you look at how the only the only the only agency to interpret this is one of the appellant is one of the appellees. And so the way that they interpreted it is is contrary to how they had interpreted in the past. And so I don't there there's there's no check on that. There's no way to. Otherwise, there's no way to be able to appeal that decision and to be able to question. And you're not really appealing. You're bringing a case in federal court. That is a case that there's jurisdiction to bring. It's not really an appeal. It's a related claim subject to the exhaustion requirements. So and our law has three articulated exhaustion requirements. Utility failure to provide notice. I think the application would present a severe harm on the disabled child. Seems like you're asking us to create a fourth one. And maybe you are. Maybe you aren't. What's your thought on that? No, your honor. We are not. So we argued futility in the district court. And part of the basis of the argument of the futility was exactly where we are right now. Is that the state board is the only is the sole. Utility would be that like if you'd done it on time, it wouldn't have worked. Not I just missed the deadline. Right. I missed the deadline is not a utility problem. It's like a failure to do something in a timely manner. Utility means even if you'd done it, the court would have rejected. If you'd done it correctly, the court would have rejected. That might be futile, but it's not futile when you miss the deadline. Well, and and so, your honor, again, our position is that we did not miss the deadline. Well, you know, to me, you don't seem to raise the equitable arguments in your briefing on the appeal. We're in your briefing. Can we find what justice has been trying to get out of it? What is the equitable basis? A one. And so, your honor, we did not specify like a specific equitable exception. What we pointed to was that that being able once you if you if this court will find that it is not jurisdiction, that it is not subject matter jurisdiction and remanded to the district court. That the district court contemplated that there was an equitable exception. We agree with you. It's not jurisdiction. So we're talking about exhaustion. So we got it. We got it. We would have to give the district court some kind of instruction. And it would be something like you should consider this equitable tolling reason whether X exists or not. To do that, you're going to have to tell us what the reason that we should tell the district court to consider. Thank you. And so we would ask that you ask the district court to consider that whether equitable tolling applies. We do. We believe that it does. And we would also ask that you consider whether equitable estoppel applies. And part of what we raised in our briefings with the district court was that prior to the filing in the district court, there was no disagreement from from the parties that the parent that the family had that everybody had noticed. So we do believe that. And I understand it's not res judicata like that. Nobody made a decision that was based on it. But I do believe that you can look at the actions of the parties and to be able to to create that. Can you walk through? I mean, the three requirements for judicial estoppel, right? They are adopting a position that's inconsistent with the stance taken in prior litigation. That position must have been accepted by a court and that the party here, the agency must have intentionally misled the court. Right. That is the prior court, not this court, but a prior court to gain an unfair advantage. I don't see I don't just don't see any of that. And so, Your Honor, I apologize for using judicata for judicial estoppel. We believe that the first element is there. The first element is that that everyone agreed and took a position that that the claims were timely, that that the appeal could be heard. Now, Your Honor is correct. The state hearing review officer did not accept that position and rejected it. And it's also a state hearing officer. Right. So it's not a court. It is not a court. And so, you know, it's it's not a court to be able to rely on it. But it but it did not accept that. So there and and also the appellees abandoned that argument at the district court. Or that position, I should say. Is there a case that you can point to? Maybe the IRS case you mentioned doesn't sound like it where you have a federal court instructing a state agency to apply some equitable doctrine. So there are basically the federal courts are are instructing the remanding to the district court and finding that it's not barred. And so and to be able to consider at that point that the appellees want you to look and say, well, as long as you raise as long as you raise exhaustion, then then the case is done. But that that is not consistent. Let me rephrase my question. Let's assume we're in the district court. And, you know, we were probably incompetent to do that. But we think we know how things work. Two of you were district court judges. We were we were confident once. Maybe not anymore. But they I mean, if we're in front of the district court, you're talking to us now. Can you is there a case where a district court has looked to essentially say that a state agency should have applied certain equitable principles? So, Your Honor, the reason that it's hard to be able to point that point you to a case for the idea is because all of the cases where exhaustion has been found not to happen are because the parents or the the school district that that tried to move straight to the district court never tried to exhaust. They tried to bypass exhaustion. The case they tried to bypass the case they tried to bypass in this court and all the other cases that are cited in the briefings. That's why this case is different. And there isn't. I mean, I'm sorry to say that there isn't. There are cases where the where the federal courts have found, like, for example, that the agency interfered with the person being able to exhaust and therefore was able to deem that that it had been satisfied. But, but those are, but in the IDA context I haven't been able to find that because the cases that make it are where people never even attempted. And so here, I mean that like that is a different set of facts and these these parents filed in process, seven day hearing filed an appeal, like they, they did all that they could do and there's just the one question of the timeliness. Thank you. Thank you. Council. Good afternoon, may it please the court, Steve Ross and here on behalf of the Durham Public Schools Board of Education, along with the attorney for the State Board of Education, Miss Tiffany Lucas. Now there are a host of analytical paths that are available to the court today, but ultimately this case comes down to two things. Exhaustion of administrative remedies under the IDA is required, and the appellants did not exhaust. And I do want to go straight to, I think the core issue that this court was interested in there in terms of equitable exceptions. Let me, let me get start before that if you don't mind. You were kind of assuming there's an exhaustion requirement. Where is the exhaustion language that you say exists in the statute. So, Your Honor, there are two areas I think of exhaustion that are relevant here. One is in 114 1415 L, which is the specific exhaustion provision related to ancillary claims 504 claims claims that speaks to whether you have exhausted the idea in order to access. That's talking about the ADA and the RA claims. That's correct, Your Honor. And so, and it does use the word exhaustion in that provision. Is there any provision where the word exhaustion is used in respect to a direct IDA claim. There is not to my knowledge, Your Honor, the sections that are relevant are 20 USC 1415 F and G, which speak to what the petitioner shall do. They shall file with the lower tier review that the state sets up and then they shall file under G if there's a second tier, they have to pursue that courts for the entire 50 year history of the EHA and then the IDEA have required have interpreted that to be an exhaustion. Does it add anything to the argument that there have been eight prior cases where the procedure that the appellate followed in this case was done and there were no problems. So, Your Honor, at this stage, because of the standard of review that we're under, we take the pleadings as true. I cannot speak as counsel for the Durham board, whether that is accurate, what the underlying facts of each of those circumstances may be. But the allegations in the complaint are that there have been these eight. I do not believe that is relevant here for several reasons. One is that the law is what the law is. And if the appellant did not comply with the law and the state review officer applied that law strictly, that is within his power. The second piece is that this state review officer is an independent person appointed by the State Board of Education. We have different review officers through these. I do not know whether this review officer or others have been among those eight alleged cases where this procedure has been used. But the third piece of this is that I've lost the third piece. I apologize. Let me ask a question and maybe I'll pop back into your head. We do have a decision, E.L., that your colleague referred to. And while it found that the two-tiered appeal, two-tiered system didn't present a problem, it seems to create this concept that state administrative procedures, if they undermine the purposes of the statute, can be, you know, that a federal court can excuse compliance with them. I know they found that it was not the case there. But that kind of concept is embedded in that case. Why doesn't, why don't we have that here? We have, you know, for all the reasons that were just said, you know, no question everyone knew the appeal was going on. No question they got it in some fashion or another. Why isn't this undermining the purposes of the IDEA? So, Your Honor, to answer that, I think I need to go back a little bit in terms of the original question that has been brought to this court, which is whether this is jurisdictional and things processing and what that means, depending on the scenario that the court takes. Obviously, this court has previously held that exhaustion in the IDEA is jurisdictional in Edmond v. School District and most as recent as four years ago in ZG v. Pamlico County. I think we can all agree if this is jurisdictional still, then the case ends with the failure to exhaust. There is no equitable remedy available there other than, although you noted Judge Balaban earlier, that this court has laid out those three very narrow exceptions to exhaustion, even under a jurisdictional realm, which would not be the typical. Doesn't that kind of tell us it's not jurisdictional? I'm sorry, Your Honor? Doesn't that kind of give us a good hint it's not jurisdictional? It may, Your Honor. It may. And you won't hear me vociferously arguing for jurisdictional rule here. I think that is the precedent that this court has held. Typically, this court doesn't overturn that unless sitting on bonk. But if this panel were to proceed to a claims processing rule, I think there are two ways that this could go. The first is that, as some other federal circuits have done, to examine the question, is this jurisdictional versus claims processing to, as you said, say, this looks a little bit more like a claims processing rule in light of Fort Bend and its predecessor cases. But it doesn't change the outcome in this case. So we're not going to upend our jurisprudence. The Second Circuit, the Eighth Circuit, the Tenth Circuit at this point have done that. Well, let's talk about a couple of other issues. If we say this is a claims processing rule, then we've got to consider other principles such as mootness and standing. So in this case, the student is no longer, she's left the Durham Public School. And number two, whether she has standing to sue SBE, whose involvement is relevant to this, was more attenuated in the Durham Public School. She may have a right to sue the Durham Public School, but what about SBE? And the mootness argument. Respectfully, I'll defer to the state on whether there's standing to the state. I personally don't think there is, but that's really an argument for Ms. Lucas, if the court will allow me to do that. As to mootness, I think that there are a couple of issues that come in here. One is, as we've noted, the issue that was at the core of half of the case was this contract. And that contract's been abandoned, and the district court was made aware of those but did not reach that issue. But I don't think we need to reach the question of mootness or standing here yet, Your Honor, which is that even if we're under a mandatory claims processing rule, the Supreme Court has said several things there. One is, and this is in Hamer v. Neighborhood Housing, that a mandatory claims processing rule, if properly invoked, must be enforced. And here that has been done. As soon as this case was filed, there was an exhaustion argument made at motion to dismiss. Isn't that really the question of whether under Steel Co. and Senecam, whether we can do those questions before we do jurisdictional questions? I mean, Judge Floyd wants to talk about the jurisdictional questions and just pause it for a minute that we think this is not jurisdictional. Generally, we think we do jurisdiction first. Obviously, Senecam says that's not always true. Do we think that this claims processing rule is something that we could do before we address questions like standing and mootness? No, Your Honor, I don't think so. What I was trying to communicate there is that the outcome of the claims processing rule doesn't change the outcome of the district court's analysis, and therefore the district court did not reach those issues. But yes, if we had to go back and say jurisdiction first, we could look at mootness and find that the 504 case and the ADA case, which are based at least against the Durham Public Schools, on the issue of mootness of the contract, that you could find that contract, has been abandoned and is no longer used. There are no exceptions involved there, and that claim would still be moot and would not be reachable. As to the State Board, again, I'll allow Ms. Lucas to make her argument. The briefing there, I think, was done that standing would also be a barrier to those 504 and ADA claims. Whether there's IDEA mootness, Your Honor, is not an issue that's been briefed. I do think that there is an issue about whether this can be remedied. Because they got everything they were supposed to get under the IDEA. Can't they see, I can't recall if they've alleged this, maybe you can help me, but can't they see compensatory damages based on what happened before they left the school district? They could seek remedies under the IDEA, which may include compensatory education, but not monetary damages. Yes, Your Honor, that could potentially be available. It was obviously not found by the ALJ to be appropriate because they did not meet their burden of proof in the case. And they did not have the opportunity because they failed to exhaust administrative remedies appropriately and appeal appropriately to have the State Review Officer review that. That is something that is usually available. Can you come back to why this hyper-technical analysis or approach to the appellate process here doesn't undermine the IDEA? Yes, Your Honor, I think the word hyper-technical may be overstating it. We do have an issue here where there are rules. The State statute is where we would start here. And this is 115C, 109.9, and it states that if the party is aggrieved by the ALJ's decision, they may appeal by filing a written notice of appeal with the person designated by the State Board for receiving such appeals. That's very close to a quote. Two pieces I want to highlight of that. One is filing, and second is the person designated by the State Board for receiving those appeals. So one question is, did they file? And two is, who did they file with? And what happened here, and this may be helpful as well, is to lay out the structure here. The Office of Administrative Hearings is a quasi-judicial body that is created by statute. And its only relationship to special education is that in the state of North Carolina, it is given jurisdiction to hold these hearings, these trials at the first level. This North Carolina State Board of Education is a constitutionally created body. They are not the same. They are not even related except for this one little piece that there happens to be this niche role for OAH in the special education review process. They are not the same body. What happened here is the original hearing occurred, and then there's supposed to be a bridge to the State Board of Education, an appeal that has to be filed with the person designated to receive such appeals. That person is indisputably Theresa King at the North Carolina Department of Public Instruction. The appellant's complaint states on its face that they filed with the Office of Administrative Hearings. Now, they say the Office of Administrative Hearings sent that to Ms. King, and we take that as true at this posture. But that doesn't mean they filed with Ms. King. They filed with the Office of Administrative Hearings, which does not have a role once it has completed the record of the hearing below. Sure. Well, yeah, I'm not really contesting there wasn't absolute compliance. So I think that's – the district court found that, and it's probably hard to say that was wrong. But as you know, I mean, y'all conceded below there was notice to everyone. And what I'm really trying to get at is assume failure to comply because if you have complied, you don't look to this undermining the statute concept. So – Yes, you're right, and I'm sorry. I keep not getting to that. I mean, we know they didn't technically comply. So I would argue, Your Honor, the opposite, that, in fact, making a decision that undercuts what the district court did here and the state review officer did is what would undermine the IDEA's process. Because court after court after court has talked about the importance under the IDEA of this hybrid system where the state is left with the educational – substantive educational decision-making process. And the federal courts do not get involved until the state has had a full opportunity to review as the educational experts in those cases. The IDEA is very clear on that. And so if this court were then to take that away from the state and say, well, you don't get to apply your own rules. You don't get to interpret them as the IDEA has done in North Carolina as the educational experts in the situation, the federal bench is going to come in and change that. That, to me, would undermine the purposes of the IDEA, not the opposite here. But also, this goes to these equitable exceptions. I do want to make sure that I address this quickly. There are no equitable exceptions available here for a couple of reasons. One is that this court has made clear that only three of them exist at this point. Appellant has not identified in the briefing what the equitable exception would be, and that's a problem, Your Honors. That the briefing would need to tell this court, this is the equitable exception that applies. That does not appear before the district court with the exception of the futility piece that the district court handled at length in its opinion. It does not appear in the opening brief to this court, and it does not appear in the reply brief to this court, again, with the sole exception of futility. So what the appellant is asking in the end here is that this court simply remand to the district court with instructions to give the appellant a do-over and to argue all these equitable exceptions that were not raised and, frankly, have not been created. Although, to be fair, I mean, it wouldn't have made a ton of sense to make those arguments for the district court because it was a jurisdictional rule then, right? I mean, I understand your point in the court here. They were arguing it was not jurisdictional, and then they don't flesh out very well the reasons that apply. But they really didn't have the opportunity to argue in the district court, right? Well, Your Honor, there are those three equitable exceptions that have been articulated by this court. They only argued one of those. But even so, when they came to this court and introduced for the first time the argument of mandatory claims processing versus jurisdiction, that was the time to say, here's why it matters. Mandatory claims processing allows you to consider equitable exceptions. Here's the one that applies, or here are the three that apply. That does not exist in their briefing anywhere. This court did not invent one. When the United States Supreme Court has reserved that question repeatedly, it does not even do so. And so we would ask this court to affirm the decision below. Thank you, Counsel. Ms. Lucas, we're happy to hear from you. Thank you, Your Honor. Good afternoon. Tiffany Lucas on behalf of the North Carolina State Board of Education from the North Carolina Department of Justice. Your Honor, I would be happy to address any State Board of Education specific questions from the start. You might start with Judge Floyd's question. Yes, the question regarding the standing and whether that comes into play. And that is where I would like to start as well. As Your Honors well know, the district court dismissed the amended complaint on the basis of lack of subject matter jurisdiction for failure to exhaust administrative remedies. However, this court, of course, may affirm the dismissal by the district court on the basis of any grounds supported by the record, even if that was not the basis relied upon by the district court. And here there are several other grounds upon which the district court could have dismissed the amended complaint with respect to both defendants. But I'm here specifically to address the basis upon which dismissal was appropriate as to the State Board of Education. And the primary basis beyond failure to exhaust remedies and the jurisdictional question is on the basis of standing. Because standing is a jurisdictional question, the courts must independently ensure its presence. Can you answer the question I asked your colleague as well? Why under just from the order of decision perspective, if we found that this is a claims processing rule and not a jurisdictional one, the administrative exhaustion piece, that's no longer a jurisdictional question. But under Seneca and the Steelco framework, can we treat that as a threshold matter like for nonconvenience or other issues that can be decided at the same time as jurisdictional questions like standing? Or do we, in your view, have to look to standing before we address the claim processing rule? I think the standing has to be addressed at the at the at the front end. Right. No, they both have to be addressed at the front end. But the court in Seneca says there's certain threshold matters that are non-jurisdictional. But because they're a threshold, we can decide them before jurisdictional questions if we're if we choose to do so. And that's the sort of holding of Seneca, maybe not totally consistent with Steelco. But the question is, why would a claims processing rule, even if non-jurisdictional, not fall within those threshold issues that Seneca identifies as being issues that could be addressed before something like standing? It may it may be the case. I think that is unclear. But for the purposes of this case and the question of standing, I think it is it is apparent that the plaintiffs did not have standing to sue the state board. The elements of standing are very clear and they are there are only a few, but they are that the plaintiffs suffered an injury. In fact, that the injury is barely traceable to the challenge action of the defendant. And finally, that the it is likely to be it is likely to be as addressed as opposed to merely speculative that the injury will be redressed by a favorable decision. And here it is apparent, even in the on the face of the complaint, that the plaintiffs have failed to satisfy the second prong of the standing test. And that is the causation prong. If you carefully review the amended complaint in this case, it is clear that the plaintiffs don't allege that the state board of education took actions that caused the injury to the plaintiffs in this matter. The allegations that the why isn't it the rule about experts? Well, the rule about experts, so I think we have to pay careful attention to the timing of the sequence of events in this case. The question about whether the contract provisions in the contracts between Durham Public Schools and the independent evaluators, that question was not brought to the state board's attention or the Department of Public Instruction's attention until those contracts were already being implemented and used in connection with the plaintiffs in this case. They weren't brought into play or into issue as part of the due process proper. It was raised as an issue in a state complaint process, which is kind of a parallel administrative decision. But even in the state complaint filings, there was no indication that these plaintiffs in the due process and now in this lawsuit were the subject of the state complaint. And the state board of education and the Department of Public Instruction reached their final conclusion about the propriety of the various challenge provisions in the Durham Public Schools contract well after anything having to do with these contracts and these particular plaintiffs. So it cannot be the case that the state board of education's decision or evaluation of those provisions in the IEE contracts had any bearing or caused any injury to the plaintiffs in this instance. Thank you. It appears I'm out of time. Unless your honors have any further questions, I respectfully request that the court affirm the dismissal of the complaint here. Thank you. Thank you. Be happy to hear from you. Thank you. Thank you. I just have a couple of follow up points to raise. So first, Judge Carl on to your point about doesn't this frustrate the purpose of the IDA, I would say, yes, it does. And every time that Congress has spoken when the Supreme Court decided Smith v. Robinson, that quickly Congress overruled Smith v. Robinson and opened with the intent to open the doors and to be able to allow parents to fight and to have to litigate on behalf of their children. And I think interpreting this in such a narrow way. Can you respond to your colleague's argument? Your colleague sort of says, you know, listen, a big part of the idea is to, like, let the states address these issues as an initial matter. And we agree that states and federal courts and agencies can have rules. Right. There's no there's not this, like, unlimited time to do whatever you want, whatever you want. And as a result of you filing late, the second tier didn't get a chance to, you know, apply its expertise. And so if we cut that out, then, you know, each plaintiff that shows up just says, well, I'll file late. That way I get rid of the second layer. And so I'm a file a get rid of the second layer and I'll just run off to the federal courts and they'll they'll, you know, hand out baby roots.  So so I will address that, Your Honor. So first, the in North Carolina, as your honors are I'm sure aware, the second tier review has been repealed. So but but to the bigger point of making sure that we have the opportunity for the state to be able to resolve what the claims are. We participated in that process. We went through a seven day due process hearing and received a result. So, again, the other cases that are looking at people who are trying to bypass that. That's what my colleague is referring to is because the cases like even the cases cited by my colleague Chavez for New Mexico. The court analyzed and said the parents have done enough to satisfy the exhaustion requirement. We're going to let this move forward. And so I do feel that there are many cases where the court actually does look at the facts and say, you know, was there was there enough when when the parents have taken action to try to resolve the issue. That is exactly the case here. And so in terms of what you asked me previously about which equitable principles, I think there's two. I think there's equitable tolling. We persistently tried to exercise our claims. We tried to file in every way that we could. And the unforeseen circumstance is was that the agency changed the rules about filing without any notice, without notice and comment, without any of the process. They may have changed the enforcement of the rule, but they didn't actually change the rule. Right. The language stayed the same. Your point is, is eight times before they didn't enforce the rule. But that's not changing the rule. That's just saying, listen, we've been sort of lax, but we've decided we're not going to enforce the rule. Your Honor, I am aware of no instances where they enforced the rule or interpreted the rule. I'm aware of one. Besides me. Besides the first time. I got one good example. That is a good example, Your Honor. And so but but then part of what my response to that would be is that when you also look at equitable estoppel is you're looking at whether the other party acted unfairly. And I think that is the part where. That's like the highway patrolman sitting beside the road. People go speed and pass, speed and pass. And then I pull out and stop the 18th person that goes by. There's not an estoppel problem there. They can't stop everybody. They don't choose to stop everybody. Right. Maybe they're very generous sometimes and they're less generous others, but they still have rules. I understand that, Your Honor. But the difference in this case is that this is the case where the state board was a party. And in all of the other cases, the state board was not a party. But in the case where the state board was a party and was a named was a named defendant or named respondent and the underlying due process action that was up for a kill. This is when they chose. And so I think you can it would be very easy to make an analogous argument to watching lots of other people go by that and let them go by speeding and then target one person and say, here, we're going to apply the rule. And we're not going to let you know that this is how we interpret the rule. There's no there are, as we outlined in our opening brief, unlike other states that have very clear, explicit. This is what filing. This is what written notice. This is who you send it to. It has to be certified mail. What you see in that one sentence. That's all there is. There's not even a lot of that council. The no notice to parents of the administrative process. There's that second exception. It's really more about administrative rights than notice provision. So it's probably not technically applicable. Yes, Your Honor. So that that would be more when we were arguing about statute of limitations, which I actually think, you know, and to answer your question about, well, what if we just what? If we're just being able to file late? Well, when you have that, we have a statute of limitations. Does it matter? Does it matter that the student is no longer enrolled in the Durham public schools? No, it does not, Your Honor. So the compensatory education to which she is entitled is backward looking. She still is a resident of Durham. She can re-enroll tomorrow. But you ask for forward looking relief, too. I'm sorry, Your Honor? You ask for forward looking relief, too, such as an injunction. The only forward looking relief that we asked was an injunctive relief as to the state board, as well as to DPS with regard to the contract. But even if this court finds that she's not entitled to injunctive relief with Durham public schools, she is entitled to injunctive relief for the state board. And she's also entitled to declaratory relief because, as we know, a declaratory claim can move forward when it's needed to be able to establish that damages are due. And that is the case here. So we're seeking both declaratory, injunctive and monetary damages. Thank you, counsel. As you probably know, we normally come down and greet counsel. It's an important part of the Fourth Circuit's tradition to show our civility and get a chance to speak to you. We have not yet reinstituted that. We certainly hope we do so soon. But we thank you very much for your argument and look forward to speaking with you some other time. Thank you very much.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Henry F. Floyd